**Jerry L. HANCOCK, Sr., as Personal Representative of the Estate of Mark Hancock, Plaintiff–Appellant,**

v.

**KENTUCKY CENTRAL LIFE INSURANCE CO. and Sandra Knight, Defendants–Appellees.**

No. 47A01–8712–CV–327.

Court of Appeals of Indiana, First District.

Aug. 30, 1988.

Opinion on Denial of Rehearing Oct. 24, 1988.

William H. Kelley, James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for plaintiff-appellant.

R. Douglas Hailey, Ramey & Hailey, Indianapolis, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Jerry Hancock, Sr., as personal representative of the Estate of Mark Hancock appeals from the Lawrence Circuit Court's grant of judgment in favor of Sandra Knight. We affirm.

## FACTS

On July 16, 1983, Sandra Knight and Mark Hancock were married. Thereafter, Mark purchased several life insurance policies. On December 7, 1984, Mark and Sandra's marriage was dissolved in the Jackson Circuit Court. On January 1, 1985, Mark was killed in an automobile accident.

After Mark's death, Mark's father, Jerry L. Hancock, Sr. initiated a contact with Sandra to discuss the proceeds of Mark's life insurance policies. On January 11, 1985, Sandra and Jerry met twice at the corporate offices of Hancock Construction Company, Inc. At the first meeting only Sandra and Jerry were present. At the second meeting Jerry's attorney and an insurance agent for Kentucky Central Life Insurance were present. At this meeting Jerry told Sandra that Mark had a $25,000 Life Insurance policy with Kentucky Central which named her as beneficiary. Jerry, however, failed to tell Sandra that the policy contained a triple indemnity clause for accidental death. Mark also had purchased several other insurance policies, and two (2) of these policies also named Sandra as beneficiary. The total value of the insurance policy proceeds to which Sandra was the named beneficiary was $144,000. The record indicates that Jerry misrepresented to Sandra that Mark had changed the beneficiary designation on the other policies and that the only policy at issue was the Kentucky Life Insurance policy. Jerry also represented to Sandra that if she did not sign a contract releasing the proceeds to him, he would sue her and all the money would go to the attorneys and to Sandra's father. Under the mistaken be-

lief that she was the named beneficiary only on the Kentucky Life Insurance policy and based upon the threat of litigation and dissipation of the insurance proceeds, Sandra signed a contract releasing all insurance policy proceeds to Jerry in return for $25,000. Sandra thought that this contract would safeguard her interest in the insurance policy proceeds, and would keep the proceeds away from her father and the attorneys. In late January Sandra discovered that the Kentucky Insurance policy proceeds equalled $75,000, not $25,000. Sandra sought the advice of an attorney and through this attorney she sent a notice of revocation of the agreement to Jerry.

On March 21, 1985, Jerry filed the present action for declaratory judgment to determine who should receive the insurance policy proceeds. Thereafter, the proceeds were deposited with the court. After a bench trial, the trial court voluntarily entered findings of fact, conclusions of law, and a judgment in favor of Sandra, in part, as follows:

### "FINDINGS OF FACT

. . . . .

"4. On or about August 18, 1983, Kentucky Central Life Insurance Company issued to Mark S. Hancock as owner a $25,000.00 life insurance policy upon the life of Mark S. Hancock (Policy Number 00–0168186) whereby Kentucky Central Life Insurance Company promised to pay to Sandra Knight Hancock certain sums upon the death of Mark S. Hancock.

"5. The American Family Life Assurance Company of Columbus, Georgia, issued to Mark S. Hancock as owner Policy Number G900B, Certificate Number, W763517, in the amount of $12,000.00 whereby said company promised to pay Sandra Knight as primary beneficiary on said policy certain sums on the death of Mark S. Hancock.

"6. Mark Hancock was the owner of a certain insurance police [sic] with American States Insurance Company under Policy Number 399–006 which named named [sic] Sandra Knight as primary

beneficiary and which has paid to the estate the sum of $56,700.00.

"7. After the issuance of said policies, the dissolution of the marriage of Mark S. Hancock and Sandra Knight Hancock occurred as set forth above.

"8. All of the premium payments due on said policies were paid as required under the terms and conditions of said policies.

"9. On January 1, 1985, the insured under said policies, Mark S. Hancock, died.

"10. On or about January 11, 1985, the personal representative herein entered into a contract and agreement with the Defendant, Sandra Knight as to the ownership of insurance proceeds on the life of said Mark S. Hancock and said agreement was executed by the parties herein and was presented to the Court for the ratification and approval of the Court.

"11. By the contract Sandra Knight signed and transferred any and all interest which she might have in the above entitled policies to Jerry L. Hancock, Sr., as the personal representative of the Estate of Mark S. Hancock.

"12. The contract was formed by the parties upon the jointly held mistaken assumption that they were dealing only with the proceeds of the Kentucky Central Life Insurance Co. policy. The assumption was basic or fundamental to the agreement the parties reached.

"13. The mutual mistake of fact had a material effect on the agreed exchange of performances.

"14. The mutual mistake of fact was in no sense a result of any act or omission on the part of Sandra Knight.

"15. Neither party to the contract changed his or her position in any significant way as a result of reliance upon the existence of the contract.

"16. On Jan. 30, 1985 Sandra Knight rescinded the contract.

"17. Life insurance policies are contracts which designate who is to receive the net proceeds of the policy upon the death of the insured.

"18. In the absence of subsequent enforceable agreement to the contrary life insurance policy proceeds must be paid to the designated beneficiary.

## CONCLUSIONS OF LAW

"1. Indiana law requires a court to set aside a contract which is founded upon a material mutual mistake of fact. See Farnsworth *CONTRACTS*, Sec. 9.3 Mutual Mistake (1982).

"2. Indiana law provides that divorce does not effect a change of beneficiary in life insurance policies. See *Wolf v. Wolf*, 147 Ind.App. 246, 259 N.E.2d 96, 97 (1970) and *Metropolitan Life Insurance Co. v. Tallent*, 445 N.E.2d 990 (Ind.1983)

"3. The contract between Jerry L. Hancock, Sr. as personal representative of the Estate of Mark Hancock and Sandra Knight is void.

"4. Sandra Knight is entitled to receive the proceeds of the policies of insurance on the life of Mark Hancock that are described in detail in the Findings herein.

## JUDGMENT

"IT IS NOW, THEREFORE, ORDERED ADJUDGED AND DECREED that Sandra Knight, the defendant herein, is entitled to be paid all of the net proceeds of Kentucky Life Insurance policy number 00–0168186, American Family Life Assurance Co. policy number G900B certificate number W763517 and American States Insurance Co. policy number 399–996 [sic]. It is, further, ORDERED, ADJUDGED AND DECREED that the companies or the plaintiff, as the case may be, immediately pay said proceeds together with any accretions to Sandra Knight. Costs of this action are taxed to the plaintiff."

Record at 406–07. Jerry appeals this judgment.

## ISSUES

Four (4) issues have been presented on appeal:

1. Whether the trial court's findings of fact, conclusions of law, and judgment are clearly erroneous?

2. Whether the trial court erroneously permitted Sandra to present evidence of statements made prior to and contemporaneous with the signing of the agreement?

3. Whether the insurance policy proceeds should be awarded to the estate because the decedent and his ex-wife had been divorced for less than a month at the time of the decedent's accidental death?

4. Whether this court should award damages to appellee under Appellate Rule 15?

## DISCUSSION AND DECISION

### Issue One

■ Jerry Hancock challenges the trial court's findings of fact, conclusions of law, and judgment which invalidated the contract between Hancock and Sandra that released and transferred all insurance proceeds to the estate. In challenging the trial court's determination Hancock confronts a strict standard of review. We neither reweigh the evidence nor judge witness credibility, as these are the functions of the trier of fact. We examine only that evidence and the reasonable inferences to be drawn therefrom which support the trial court's decision. When a case is appealed after a trial to the court without a jury we will not reverse unless the decision is clearly erroneous. The trial court's decision will be found clearly erroneous only when upon a review of all the evidence we are left with a definite and firm conviction that a mistake has been made. Furthermore, the trial court's decision will be upheld if sustainable upon any theory that is not contrary to the findings of fact. *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 254; *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, 521, *trans. denied*; *Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094, 1097; *Baker v. Compton* (1983), Ind.App., 455 N.E.2d 382, 385–86.

■ Hancock argues first that the trial court determined erroneously that the contract with Sandra which released and transferred insurance proceeds to the Estate was invalid due to a mutual mistake of material fact. Equitable relief may be granted if a contract is based upon a mutual mistake of material fact. *Franklin v. White* (1986), Ind., 493 N.E.2d 161, 165; 17 Am.Jur.2d *Contracts* § 143 (1964); 54 Am. Jur.2d *Mistake, Accident, or Surprise* §§ 16 and 26 (1971). Hancock suggests, however, that the evidence established that both parties knew that other insurance policies existed and that their proceeds were included in the contract. Hancock suggests further that although neither party

knew the specifics of these other policies, the agreement properly allocated the risk of this limited knowledge. Hancock's argument amounts to no more than a request that this court reweigh the evidence and the credibility of the witnesses. This we cannot do. The record indicates that although Hancock testified that he knew about the other policies and that he told Sandra that the other policies existed and were part of the contract, Sandra testified that she did not know that she was a named beneficiary on other policies and that they would be covered by this agreement. The trial court was not required to believe Hancock's testimony, and the trial court's finding that "the contract was formed by the parties upon the jointly held mistaken assumption that they were dealing only with the Kentucky Life Insurance Co. policy" was supported by Sandra's testimony. This evidence sufficiently supported the trial court's findings of fact and conclusions of law which determined that the contract was invalid based upon a mutual mistake of material fact. Therefore, since a trial court may grant equitable relief when a mutual mistake exists, the judgment in favor of Sandra is not clearly erroneous.

 The trial court's decision also is supportable under a theory of unilateral mistake. Although a contract generally may not be avoided for unilateral mistake, equity will relieve the consequences of a mistake induced by the misrepresentation of the opposite party. 17 Am.Jur.2d *Contracts* § 146 (1964); 54 Am.Jur.2d *Mistake, Accident, or Surprise* § 18 (1971). In the present case, the record indicates that Hancock misrepresented to Sandra that Mark changed the beneficiary on all of the other policies. Thus, even if Hancock knew that other policies would be part of the contract, Sandra did not know and was misled by Hancock's representation. This theory is not inconsistent with the trial court's findings. Therefore, the trial court properly invalidated and refused to enforce the contract between Hancock and Sandra.

### Issue Two

 Hancock argues next that the trial court erred by permitting Sandra to present evidence of statements made prior to and contemporaneous with the signing of the contract. Hancock argues that the trial court improperly admitted and considered this evidence in violation of the parol evidence rule. Hancock's argument fails for two (2) reasons. First, Hancock has waived this issue by failing to cite to the record and by failing to indicate that a proper objection was raised at trial challenging the admissibility of this evidence. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Thompson v. State* (1986), Ind., 492 N.E.2d 264, 278; *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 242. Second, the trial court properly admitted and considered this parol evidence. The parol evidence rule does not apply to cases involving evidence of mistake. *Franklin*, at 164; *Brames v. Crates* (1980), Ind.App., 399 N.E.2d 437, 442. Therefore, we find no error under this issue.

### Issue Three

 Hancock argues last that even if the trial court determined correctly that the contract with Sandra was invalid, then the trial court still erred by not transferring the proceeds to the estate. Hancock argues that since the decedent and his ex-wife had been divorced for only a month at the time of decedent's accidental death, and since decedent had expressed an intent to remove Sandra as a beneficiary [of] his insurance policy proceeds, equity demands that Sandra not receive the proceeds. Hancock relies on the Wisconsin case of *Spalding v. Williams* (1957), 275 Wis. 394, 82 N.W.2d 187 to support his argument. However, *Spalding* was overruled by the case of *Bersch v. VanKleeck* (1983), 112 Wis.2d 594, 334 N.W.2d 114. Furthermore, *Spalding* never stood for the proposition that the court will change the beneficiary designation of a life insurance policy if the decedent was divorced recently and had declared an intent to change the beneficiary. The Wisconsin court's reference in *Spalding* to the decedent's recent divorce and his intent to change the beneficiary was made in response to and in rejection of the ex-wife's argument that the decedent intended to revest her with the right to the insurance proceeds, and was not the holding of the case. Rather, *Spalding* held that where the general language of a divorce decree evidences an intent to divide all marital property, the right to insurance proceeds is included in that decree. *Spalding*, 275 Wis. at 399–400, 82 N.W.2d at 190. As stated previously, this holding was overruled in *Bersch*, in which the Wisconsin Supreme Court held that the divorce decree must contain specific language and notice must be sent to the insurance company

before an ex-spouse beneficiary loses the right to life insurance death benefit proceeds. *Bersch,* 112 Wis.2d at 598, 334 N.W.2d at 117.

■ In Indiana, a divorce decree alone does not result in a change of the beneficiary named in a life insurance policy. *Farra v. Braman* (1909), 171 Ind. 529, 547, 86 N.E. 843, 850; *Wolf v. Wolf* (1970), 147 Ind.App. 240, 242, 259 N.E.2d 93, 94; *Wolf v. Wolf* (1970), 147 Ind.App. 246, 247, 259 N.E.2d 96, 97. Thus, an ex-spouse who is the named beneficiary on a life insurance policy could collect death benefit proceeds unless the insured changed the beneficiary designation. However, a beneficiary designation may be changed automatically by a specific provision in the insurance policy. *Herdman v. McCormick* (1942), 111 Ind. App. 169, 179, 40 N.E.2d 1009, 1012. In *Herdman* the life insurance policy contained a provision that prevented the designated beneficiary, "my wife Mildred McCormick," from collecting the death benefit proceeds if there was no such person at the time of the insured's death. The Indiana Court of Appeals held that since Mildred had divorced the insured and had her maiden name reinstated no such person as the named beneficiary "my wife Mildred McCormick" existed, and Mildred, as an ex-wife, had no interest in the death benefit proceeds. *Id.*

In the present case, unlike *Herdman,* no provision in the insurance policies automatically conditioned or changed the beneficiary designation. Furthermore, the decedent did not take the necessary steps to change the beneficiary designation. The decedent's mere expression of an intent to change the beneficiary does not effectuate the change. Therefore, Sandra as named beneficiary was entitled to the death benefit proceeds, and the trial court did not err in so ruling.

*Issue Four*

■ Sandra argues that we should award her damages under Indiana Rules of Procedure, Appellate Rule 15(G). If a judgment is affirmed on appeal the reviewing court may award damages in its discretion. *Posey v. Lafayette Bank and Trust Co.* (1987), Ind., 512 N.E.2d 155, 156; *Orr v. Turco Mfg. Co.* (1987), Ind., 512 N.E.2d 151, 152. However, the fact that the judgment is affirmed does not in itself justify imposition of sanctions under A.R. 15(G). The proponent of appellate sanctions must establish that the appeal is permeated with frivolity, bad faith, harassment, vexatiousness, meritlessness or designed delay. *Orr,* at 152. In the present case, Sandra argues that Hancock's appeal is permeated with bad faith and designed delay. We disagree. Although Hancock threatened Sandra with litigation prior to the time she signed the release of insurance proceeds contract, Sandra has presented no other evidence to indicate that the current appeal was permeated with bad faith or designed delay. Therefore, we deny Sandra's request for damages under A.R. 15(G).

AFFIRMED.

SHIELDS, P.J., and ROBERTSON, J., concur.

### ON PETITION FOR REHEARING

On petition for rehearing Jerry Hancock, as Personal Representative of the Estate of Mark Hancock, challenges our published opinion. Hancock raises several challenges, none of which merit the grant of a rehearing. However, two (2) issues raised require clarification of our opinion. The first issue involves an erroneous statement in the statement of the facts which indicated that Hancock initiated the contacts regarding the agreement in question. Hancock correctly notes that Knight made the first contact following Mark's death. However, this factual error does not change the decision in this case.

Hancock challenges also our statement in Issue 2 of the opinion which erroneously indicated that Hancock waived any error as to the admission of parol evidence. The parol evidence rule is a rule of preference and of substantive law "which prohibits both the trial court and appellate court from considering such evidence even though it was admitted to trial without objection." *Franklin v. White* (1986), Ind., 493 N.E.2d 161, 165–66. However, this error does not require reversal. As stated in our original opinion, the parol evidence rule does not apply to evidence of mistake, as was presented in this case. Therefore, Hancock's petition for rehearing is denied.

ROBERTSON, J. and SHIELDS, P.J., concur.